# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | | |
|---|---|---|
| **LEONARD J. SALANITRO,** | ) | Case No. **3:11-cv-01051-SI** |
| | ) | |
| Plaintiff, | ) | **ORDER ON PRETRIAL MOTIONS** |
| | ) | |
| v. | ) | |
| | ) | |
| **WASHINGTON COUNTY**, an Oregon | ) | |
| municipality, **JAMES WHEATON**, an | ) | |
| individual, and **PATRICK ALTIERE**, an | ) | |
| individual, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Michael T. Wise, MICHAEL WISE & ASSOCIATES, P.C., 800 Jackson Tower, 806 S.W. Broadway, Portland, OR 97205; and David D. Park, ELLIOTT & PARK, Abernethy House, 0324 S.W. Abernethy Street, Portland, OR 97239-4356. Of Attorneys for Plaintiff.

Christopher A. Gilmore, Sr. Ass't. County Counsel, OFFICE OF WASHINGTON COUNTY COUNSEL, 155 N. First Ave., Suite 340 – MS 24, Hillsboro, OR 97124-3072; and William G. Blair, WILLIAM G. BLAIR, P.C., P.O. Box 5476, Beaverton, OR 97007. Of Attorneys for Defendants.

**SIMON, District Judge.**

Plaintiff Leonard J. Salanitro ("Plaintiff") has sued Defendants Washington County,

Washington County Deputy Sheriff James Wheaton, and Washington County Deputy Sheriff

Patrick Altiere (collectively, "Defendants"). Plaintiff asserts four claims. First, Plaintiff alleges,

under 42 U.S.C. § 1983, that Defendant Altiere used excessive force in violation of Plaintiff's

constitutional rights when Altiere shot Plaintiff during the evening of September 21, 2010, in the

home of Dale and Sue Ann Fortune. Second, Plaintiff alleges, also under 42 U.S.C. § 1983, that

Defendants Altiere and Wheaton subjected Plaintiff to custody in violation of Plaintiff's

constitutional rights. Third, Plaintiff asserts a claim of battery under state law only against

Defendant Washington County based on the actions of Washington County Deputy Sheriffs. And

fourth, Plaintiff asserts a claim of false imprisonment only against Defendant Washington

County based on the actions of Washington County Deputy Sheriffs. Plaintiff seeks economic

and non-economic damages against all Defendants and punitive damages and attorney fees

against Defendants Altiere and Wheaton under Plaintiff's § 1983 claims.

Plaintiff and Defendants have filed numerous pretrial motions and objections.  As set

forth in the parties' Joint Status Report (Doc. No. 129), the parties have resolved many of these

disputes.  The Court now rules upon or defers until trial, as more fully explained below, the

parties' unresolved motions and objections as follows.

## I.      PLAINTIFF'S MOTION FOR JURY VIEW (Doc. No. 115)

Ruling:  GRANTED.

Plaintiff has moved for a jury view of the front porch, entrance, living room, and dining

room of the Fortune residence located at 17525 S.W. Stark Street, Aloha, Oregon. Doc. No. 115.

Defendants oppose a jury view. Doc. No. 106, at 25. The Court GRANTS Plaintiff's motion for

a jury view and provides this notice to the parties regarding the arrangements that are to be made

by Plaintiff. The Court will discuss any further particulars of the jury view with the parties at the

pretrial conference that is scheduled for on Thursday, February 14, 2013, at 9:00 a.m.

Trial judges have wide discretion to grant or deny a motion for a jury view and to determine the proper scope of the view. *See Nemex Assocs. v. PriMerit Bank*, 114 F.3d 1195 (9th Cir. 1997) (unpublished opinion); *Hametner v. Villena*, 361 F.3d 445, 445-46 (9th Cir. 1966) (*per curiam*); *see also* 22 Wright *et al.*, FED. PRAC. & PROC. EVID. § 5176.2 (2d ed.); 2 FEDERAL CIVIL LITIGATION IN OREGON (OSB Legal Pubs 2009), § 24.8 ("Motion for View"). None of the concerns typically cited by courts in denying requests for a jury view applies here. The Court accepts Plaintiff's representation that the house has not been materially altered since the time of the incident. The Court concludes that a view will not be cumulative of other evidence to be admitted at trial and that the logistical difficulties will not be great. *See* 22 Wright *et al.,* FED. PRAC. & PROC. EVID. § 5176.2 (2d ed.) (gathering the practices of state and federal courts). To the extent possible, the view should be conducted in the late afternoon to better approximate the lighting conditions at the time of the incident, although the Court recognizes that the incident occurred late at night and during darkness.

The Court GRANTS Plaintiff's motion and preliminarily orders as follows:

1.      Plaintiff will make all arrangements for the jury view, including transporting the jury and the bailiff (courtroom deputy) to the Fortune residence.

2.      Plaintiff must arrange for and provide a late model, safe, comfortable, high quality bus or van and a licensed, bonded professional driver to transport the eight-person jury and the bailiff (courtroom deputy).

3.      The parties and the Court will arrange their own separate transportation.

4.      Other than the transportation of the parties, Plaintiff will bear all costs of the jury view, including all costs and expenses of the driver and the bus or van.

5. The view will be brief, and no comments may be made by either party or by any witness. If possible and to the extent feasible, no homeowner of the Fortune residence who will be a trial witness shall be present during the view. If one or more of the residents must be present, he or she may not speak to or interact with the jury in any manner.

6. The jurors will board the bus at the federal courthouse at a date and time to be determined during the pretrial conference and will be returned to the courthouse not later than a time to be determined during the pretrial conference.

The specific date and time for the view will be discussed during the pretrial conference, although the Court is currently contemplating late afternoon on Wednesday, February 20, 2013. The Court will also discuss with the parties during the pretrial conference whether a court reporter will be needed and whether the parties, through counsel, wish to make brief statements to the jury in the courtroom regarding the purpose of the view before the jury leaves the courtroom for the view.

## II. PLAINTIFF'S MOTIONS IN LIMINE (Doc. No. 81)

### A. Motions Resolved by the Parties

As set forth in the Joint Status Report and subject to the qualifications set forth in the Joint Status Report, Defendants do not object to Plaintiff's Motions in Limine Nos. 7, 8, 9, 11, 13, 14, 17, and 18. These motions are therefore GRANTED.

### B. Plaintiff's Motion in Limine No. 1.

Ruling: DENIED.

Defendants offer the expert testimony of Philip Zerzan, who appears to be a qualified expert on issues relating to police procedure, training, and use of force. His opinion regarding the

"decision" by Deputies Wheaton and Altiere to contact and arrest Dale Fortune on September 21, 2010 provides relevant context, background, and understanding to the events of that evening, and Plaintiff may not deprive Defendants of that context by stipulating that Defendant Wheaton had probable cause to arrest Mr. Fortune. Plaintiff cites no case authority to the contrary.

C.       Plaintiff's Motion in Limine No. 2.

Ruling: DENIED.

Defendants offer the expert testimony of Philip Zerzan, who appears to be a qualified expert on issues relating to police procedure, training, and use of force. His opinion regarding the use of force by Deputies Wheaton and Altiere during the arrest of Dale Fortune on September 21, 2010, including the use of force against Sue Ann Fortune, provides relevant context, background, and understanding to the events of that evening. *See generally Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (jury may rely on expert testimony in determining whether conduct used during arrest including arm bar holds was reasonable); *Glenn v. Wash. Cnty.*, 673 F.3d 864, 877 (9th Cir. 2011) (a jury may rely on expert testimony in determining whether conduct escalated a situation leading to the use of deadly force); *Young v. Cnty. of L. A.*, 655 F.3d 1156 (9th Cir. 2011) (a jury may consider expert testimony relating to the use of a baton). Plaintiff cites no case precedent to the contrary. Plaintiff also argues that this is improper character evidence in violation of Rule 404 of the Federal Rules of Evidence ("FRE"). The Court disagrees; Mr. Zerzan is not offering his opinion about the character of any party or witness.

D.      Plaintiff's Motion in Limine No. 3.

Ruling: DENIED.

Defendants offer the expert testimony of Philip Zerzan, who appears to be a qualified expert on issues relating to police procedure, training, and use of force. Plaintiff moves to exclude his opinion that Defendant Altiere's use of deadly force was "consistent with the actions of a reasonably trained police officer." Mr. Zerzan may testify about the training standards for law enforcement officers and provide his opinion about whether the conduct in this case was consistent with those training standards. *See generally Young*, 655 F.3d at 1162 (allowing testimony regarding officer training). In addition, the Court notes that Plaintiff offers the expert testimony of Michael Lyman, who appears to be a qualified expert in the area of police practices and training. Doc No. 79-1. According to Dr. Lyman's expert report, Plaintiff intends to elicit Dr. Lyman's opinion that "the actions of Wheaton and Altiere were improper and inconsistent with nationally recognized training protocols" and that "the use of force against Salintro was excessive, unnecessary and served no legitimate law enforcement purpose." *Id.* at 11 and 13, respectively. The same rules will be applied to Defendants' law enforcement expert testimony as will be applied to Plaintiff's law enforcement expert testimony. *See also* Defendants' Motion in Limine No. 23, discussed *infra*.

E.      Plaintiff's Motion in Limine No. 4.

Ruling:  DENIED.

Defendants offer the expert testimony of Philip Zerzan, who appears to be a qualified expert on issues relating to police procedure, training, and use of force, and the testimony of Gaylan Warren, who appears to be a qualified expert on shooting incident reconstruction and forensic firearm examination. Plaintiff argues that the expert reports from Mr. Zerzan and Mr. Warren indicate that Defendants may attempt to elicit from these witnesses improper testimony

about another witness's credibility. The Court has reviewed the reports of these two expert witnesses and has not seen any improper credibility testimony. If, at trial, however, any witness attempts to testify that another witness is or is not testifying truthfully, a timely objection likely will be sustained, and the Court may also interpose its own ruling to that effect even in the absence of an objection. The jury may then be instructed to disregard any improper testimony and to make its own assessment about the credibility of any witness.

F.      Plaintiff's Motion in Limine No. 5.

Ruling:  DENIED.

Defendants offer the expert testimony of Philip Zerzan, who appears to be a qualified expert on issues relating to police procedure, training, and use of force. Plaintiff moves to exclude the testimony of Mr. Zerzan regarding the speed in seconds within which an "average officer" can draw and make a decision to shoot and fire a single round and regarding the concepts of "tunnel vision", "sensory perception", "auditory exclusion", memory, and recall. Plaintiff argues that Mr. Zerzan lacks the requisite professional qualifications in psychology and behavioral science to testify concerning these topics. The Court concludes that a qualified expert in the field of police procedure, training, and use of force is qualified to address these related issues. Plaintiff's objection goes to the weight to be given the Mr. Zerzan's testimony in these areas, not to its admissibility.

G.      Plaintiff's Motion in Limine No. 6.

Ruling:  DENIED.

Plaintiff moves to exclude evidence that Washington County's "Use of Force Policies" and general orders accurately state, follow, or are modeled after the "law of the land." Plaintiff

offers no case law authority in support of this motion. Defendants respond that the relevant

standards for the use of force are "driiven by federal case law including the seminal case of

*Graham v. Connor,* 490 U.S. 386, 396-97 (1989)." Defendants argue that an explanation that the

county's policies under which both deputies were trained "are consistent with those principles is

directly relevant to whether following those policies is reasonable." To the extent that Plaintiff

can identify any relevant policy of Washington County that is inconsistent with governing law,

Plaintiff has leave to seek reconsideration of this ruling.

> H.     Plaintiff's Motion in Limine No. 10.

> Ruling:  DENIED.

Plaintiff moves to exclude evidence of the reasons that Defendants Wheaton and Altiere

became law enforcement officers as improper "character evidence." A witness may provide the

jury with a reasonable amount of personal background information, including, among other

things, the reason or reasons why a witness chose to go into the line of work that the witness has

entered. A reasonable amount of personal background information may assist the jury in

assessing that witness's credibility and is not prohibited character evidence under FRE 404.

> I.      Plaintiff's Motion in Limine No. 12.

> Ruling:  DENIED.

Plaintiff moves to exclude "undisclosed" evidence of prior bad acts of Plaintiff's

witnesses. Evidence of prior bad acts of a witness "is not admissible to prove a person's

character in order to show that on a particular occasion the person acted in accordance with the

character." FRE 404(b)(1). Evidence of prior bad acts may be admissible for other purposes,

however, which are generally described in FRE 404(b)(2). In a criminal case, a prosecutor must

provide, upon request by a defendant, advance notice and disclosure of any such evidence that the prosecutor intends to offer at trial. *Id.* The FRE 404(b)(2), however, provide no similar requirement in civil cases. The Court follows the rules governing the admissibility of evidence of "other bad acts" as set forth in FRE 404(b). In addition, FRE 608(b) provides that a court may, "on cross examination, allow [specific instances of a witness's conduct] to be inquired into if they are probative of the character for truthfulness or untruthfulness", and this rule requires no advance disclosure. Finally, the Court notes that the Trial Management Order entered in this case, Doc. No. 40, discusses the Court's rules regarding "impeachment" evidence and witnesses at page 6 of Section V(E), *infra*.

J.      Plaintiff's Motion in Limine No. 15.

Ruling:  DENIED.

Plaintiff moves to exclude evidence that Plaintiff has not filed personal tax returns in recent years. Plaintiff argues that such evidence is irrelevant and unfairly prejudicial. Because Plaintiff intends to ask the jury to award him lost or impaired income, including lost or impaired future income, *see, e.g.,* Doc. No. 76 (witness statement for Scott T. Sipe, Plaintiff's Retained Vocational Expert), Plaintiff's prior tax returns, or lack thereof, are relevant and not unfairly prejudicial.

K.      Plaintiff's Motion in Limine No. 16.

Ruling:  *See* discussion of Defendants' Motion in Limine No. 19, *infra*.

Plaintiff moves to exclude evidence of the criminal misdemeanor convictions of Dale and Sue Ann Fortune arising out of their arrest by Defendants Wheaton and Altiere on September 21, 2010. Plaintiff argues that this evidence should be excluded as irrelevant (FRE 402), unfairly

prejudicial and likely to confuse the issues (FRE 403), and improper impeachment evidence (FRE 609). The Court's ruling and analysis is set forth in connection with Defendants' Motion in Limine No. 19, *infra.*

        L.        Plaintiff's Motion in Limine No. 19.

        Ruling:  DENIED (AS A MOTION IN LIMINE).

Plaintiff requests a limiting instruction regarding evidence of information allegedly known to Defendant Wheaton, but unknown to Defendant Altiere at the time that Defendant Altiere used deadly force. Plaintiff has submitted his Requested Limiting Instruction as Exhibit A to his Motions in Limine and requests that this instruction be given before the commencement of opening statements and again immediately before the receipt of testimony from any witness regarding Defendant Wheaton's observations of Plaintiff's actions immediately before the shooting, and again in the Court's final jury instructions. *See* Doc. No. 81, at 16. Defendants oppose this instruction because it is not limited to Plaintiff's claim of excessive force, is contrary to law, and lacks specificity regarding what information was known by Deputy Wheaton but not known by Deputy Altiere. The Court will consider giving an appropriate instruction on this topic as part of the Court's final jury instructions. The Court will also consider giving an appropriate limiting instruction during trial if the testimony and law warrants such an instruction. Such a limiting instruction will not be given before opening statements or before the testimony of any relevant witness.

## III.    DEFENDANTS' MOTIONS IN LIMINE (Doc. No. 106)

        A.        Motions Resolved by the Parties

As set forth in the Joint Status Report and subject to the qualifications set forth in the

Joint Status Report, Plaintiff does not object to Defendants' Motions in Limine Nos. 3, 7, 13, 14,

15, and 21. These motions are therefore GRANTED. In addition, Defendants have withdrawn

their Motion in Limine No. 20.

   B.  Defendants' Motion in Limine No. 1.

   Ruling: DENIED.

   Defendants move to exclude testimony from Plaintiff's expert Michael Lyman that

Defendants should have exhausted alternatives short of deadly force on the grounds that

Dr. Lyman does not specifically evaluate the use of less lethal alternatives in his expert report.

Under Fed. R. Civ. P. 26(a)(2)(B)(i), the report of a testifying expert must contain "a complete

statement of all opinions the witness will express and the basis and reasons for them." In

addition, under Fed. R. Civ. P. 37(c)(1), if a party "fails to provide information . . . as required by

Rule 26(a) or (e), the party is not allowed to use that information or witness . . . at a trial, unless

the failure was substantially justified or is harmless." Defendants further argue that a police

officer is not required to retreat from a threat or to exhaust all possible alternatives to deadly

force "in the split-seconds where such decisions must be made."

   In response, Plaintiff argues that it is "basic to a discussion of whether the type of force

and manner in which it is applied may be considered 'objectively reasonable' for there to be

consideration of the available alternatives to both the use of force and the force option actually

employed." Plaintiff further argues that "Dr. Lyman's report encompasses this issue by his

discussion of professional policing guidelines for the use of deadly force, the admitted and

undisputed fact that Deputy Altiere failed to give a warning prior to his use of deadly force and the factual circumstances present at the moment deadly force was applied."

The Court has reviewed the expert report of Michael Lyman (Doc. No. 79-1). At pages 11-17, Dr. Lyman states and explains his opinion that the use of lethal force by Deputy Altiere was improper, excessive, and unreasonable. Dr. Lyman states that Deputy Altiere "failed to announce that he was about to use lethal force before he fired his weapon" (p. 11), that Deputy Altiere's "use of deadly force, under cicumstances known in this case, was unnecessary" (p. 11), that police academies across the country teach the requirement that "when feasible, before using deadly force against a suspect must [*sic*] first be warned" (p. 12), and that "[h]ad Altiere announced his intended use of deadly force, it is likely that Salanitro would have voluntarily gone to the floor and avoided being shot" (p. 14). This is sufficient disclosure. To the extent that Plaintiff seeks to elicit from Dr. Lyman during direct examination a discussion of any other "available alternatives," upon timely objection, Plaintiff will be required to identify where in Dr. Lyman's report such other alternatives were fairly disclosed.

C.      Defendants' Motion in Limine No. 2.

Ruling:  DENIED.

Defendants move to exclude the expert testimony of Michael Lyman regarding the continued custody of Plaintiff on the grounds that Defendants have admitted liability as to the false imprisonment claim against Washington County.  Plaintiff responds that this testimony also relates to Plaintiff's second claim under Section 1983 and to Plaintiff's state law claim of battery. Plaintiff is correct.

D.      Defendants' Motion in Limine No. 4.

Ruling: GRANTED.

Defendants move to exclude any evidence that fellow officers sometimes referred to Deputy Wheaton by the nickname "Halo" and Deputy Altiere by the nickname "Angry Pat." Defendants argue that this is improper character evidence under FRE 404. Defendants add that Deputy Altiere's nickname was bestowed some time after September 21, 2010. Plaintiff agrees and states that Plaintiff will not offer evidence of Deputy Wheaton's nickname.

With regard to Deputy Altiere's nickname, Plaintiff responds by invoking Rule 404(2)(d) of the Oregon Evidence Code ("OEC"). This state law rule of evidence creates an exception to the general prohibition against character evidence used to show propensity or conformity when evidence of the character of a party for violent behavior is offered in a civil assault and battery case and self-defense has been pleaded. The FRE, however, do not contain any such exception to the prohibition against character evidence, and Plaintiff cites no legal authority to show that the OEC, rather than the FRE, should be applied here. In some circumstances, "state evidence rules that are 'intimately bound up' with the state's substantive decision making must be given full effect by federal courts sitting in diversity." *Feldman v. Allstate Ins. Co.,* 322 F.3d 660, 666 (9th Cir. 2003). But this is not a diversity case. Accordingly, evidence of Deputy Altiere's nickname, if relevant for any purpose, would only be relevant as character evidence to show propensity and as such is inadmissible under FRE 404. In addition, if Deputy Altiere's nickname of "Angry Pat" was not bestowed until after September 21, 2010, then its probative value would be significantly diminished and substantially outweighed by the risk of unfair prejudice, and the Court would exclude it under FRE 403.

E.      Defendants' Motion in Limine No. 5.

Ruling: GRANTED.

Defendant moves to exclude evidence that Plaintiff was not charged with a crime on the grounds that such evidence is not relevant. Plaintiff responds that such evidence is admissible on the issue of Plaintiff's damages. Plaintiff argues that his emotional distress is heightened by the fact "that he was ultimately not charged with any crime." Plaintiff may testify as to his emotional distress, but there shall be no evidence presented by any witness that Plaintiff was not charged with a crime. The fact that Plaintiff was not charged with a crime either is not relevant or, if it is, its probative value is so slight that any such value is substantially outweighed by the risk of confusion and unfair prejudice. Accordingly, such evidence is excluded under both FRE 402 and 403.

F.      Defendants' Motion in Limine No. 6.

Ruling:  GRANTED IN PART AND DENIED IN PART.

Defendant moves to exclude any evidence that Jayme Fortune, the son of Dale and Sue Ann Fortune, abused drugs and alcohol and "lies and steals." Defendants argue that this is improper character evidence precluded under FRE 404 and is also not permitted under FRE 608(b). Jayme Fortune is listed as a witness both on Plaintiff's Witness List (Doc. No. 88, at 8-9) and on Defendants' Witness List (Doc. No. 102, at 22). According to the parties' witness list and summaries of anticipated testimony, both parties intend to ask Jayme Fortune about his recollection of the events that took place at the Fortune home on the evening at issue. Thus, whether Jayme Fortune was under the influence of alcohol or drugs at the time that he supposedly observed the matters at issue in this case about which he will testify are relevant to his capacity to perceive, recall, and relate otherwise relevant information. The same is true with

regard to any relevant conversations that Jayme Fortune may have had with others, if those conversations are otherwise admissible. With respect to the issue of whether Jayme Fortune "lies," the Court will strictly follow FRE 608(a) (allowing reputation or opinion evidence concerning a witness's character for truthfulness or untruthfulness) and FRE 608(b) (allowing inquiry on cross-examination concerning specific instances of a witness's conduct to show a character for truthfulness or untruthfulness, but not allowing extrinsic evidence). With respect to the issue of whether Jayme Fortune "steals," such evidence is not probative of a character for truthfulness or untruthfulness and is irrelevant in this case; it is therefore excluded. *See generally Clarett v. Roberts,* 657 F.3d 664, 669 and n.2 (7th Cir. 2011) (for purposes of FRE 609, shoplifting is not a crime involving dishonesty or false statement).

G. Defendants' Motion in Limine No. 8.

Ruling: DENIED.

Defendants move to exclude the testimony of Washington County Deputy Sheriff Yonsoo Lee and the affidavit that he prepared in support of obtaining a warrant to search the Fortune residence. Plaintiff identifies Mr. Lee as a potential "impeachment" witness if Detective Coulson denies making the statements described on page 6, 7, and 8 of the affidavit. If Detective Coulson testifies and is subject to cross-examination about his prior statements made to Deputy Lee, then Deputy Lee may testify about any prior inconsistent statements made by Detective Coulson to Deputy Lee. FRE 801(d)(1)(A). In addition, the affidavit may be used to refresh the memory of Deputy Lee, if necessary. Further, the affidavit appears to be admissible, at least as against Washington County, as a statement of a party-opponent made by the party's agent. FRE 801(d)(2)(D). If the affidavit is offered and received against Washington County but not

against Defendants Wheaton or Altiere, those latter two Defendants may request a limiting instruction, if the search warrant affidavit is not otherwise admissible.

H.      Defendants' Motion in Limine No. 9.

Ruling:  DENIED

Defendants move to exclude that testimony of Washington County Deputy Sheriff William Edmond regarding the affidavit that he prepared in support of the arrest of Dale Fortune. Defendants argue that the information contained in the affidavit was obtained from sources other than Defendants Altiere and Wheaton. Defendants assert that the affidavit and its contents are inadmissible hearsay. Plaintiff responds by stating that the affidavit describes certain statements attributed to Detective Coulson, reporting on what was said to Detective Coulson by Deputy Wheaton. If Detective Coulson denies hearing these statements from Deputy Wheaton or denies reporting those statements to Deputy Edmond, Plaintiff seeks to elicit this impeachment testimony from Deputy Edmond (who may be beyond the reach of a subpoena) or by introducing Deputy Edmond's Affidavit. These issues are similar to the issues presented in Defendants' Motion in Limine No. 8, and will be treated similarly.

I.      Defendants' Motion in Limine No. 10.

Ruling: DENIED.

Plaintiff intends to call two witnesses from Tualatin Valley Fire and Rescue, Darin Heydon and Terry Taylor, who treated or attended Plaintiff at the shooting scene. Defendants move to exclude one of these two witnesses on the grounds that their testimony would be cumulative. Plaintiff responds that they may have different or complementary recollections and are thus not cumulative. This is an inappropriate subject for a motion in limine. The Court will

consider a timely objection at trial based on cumulative testimony if at trial any testimony is improperly cumulative.

J.     Defendants' Motion in Limine No. 11.

Ruling:   DENIED.

Plaintiff intends to call two EMT witnesses from Metro West, Rachel Clark and Danielle Gries, who were present at the shooting scene. Defendants move to exclude one of these two witnesses on the grounds that their testimony would be cumulative. Plaintiff responds that they will have different testimony on different interactions that they had. This is an inappropriate subject for a motion in limine. The Court will consider a timely objection at trial based on cumulative testimony if at trial any testimony is improperly cumulative.

K.     Defendants' Motion in Limine No. 12.

Ruling:   GRANTED.

Plaintiff intends to call Sheriff Pat Garrett to testify about Washington County policies and procedures, whether the shooting of Plaintiff by Deputy Altiere was justified, about the investigation and findings of the Washington County Major Crimes Unit, and why Plaintiff was hand-cuffed or leg-cuffed. Defendant argues that the Washington County Sheriff on September 21, 2010 was Rob Gordon and that Plaintiff accepted Defendants' designation under Fed. R. Civ. P. 30(b)(6) of Washington County Sheriff's Office Lt. John Black as the person most knowledgeable about the policies of the Sheriff's Office. Defendants further state that Sheriff Garrett has no personal knowledge about the incident at issue. Defendants add that Sheriff Garrett has not been designated as an expert witness by either party. In response, Plaintiff offers no substantive discussion, only an argument "heading," asserting that Sheriff Garrett is the

spokesperson for Defendant Washington County and, as such, his statements on this subject matter are admissions against that party, citing FRE 801(d)(2). Doc. No. 120, at 7. Plaintiff's "heading" is not responsive to Defendants' argument that Sheriff Garrett has no personal knowledge. Other than expert testimony received under FRE 703, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." FRE 602. Plaintiff also does not dispute that Sheriff Garrett has not been designated by any party as an expert witness.

     L.     Defendants' Motion in Limine No. 16.

     Ruling:  DENIED.

Defendants seek to exclude any non-physical injuries relating to the incident, including but not limited to any psychological or emotional trauma, experienced by any witness other than Plaintiff as irrelevant and as unfairly prejudicial. Plaintiff responds that the psychological or emotional trauma experienced by a witness to the shooting is relevant to the extent that such trauma may affect how the witness perceives or recalls the events in question. The Court agrees with Plaintiff.

     M.     Defendants' Motion in Limine No. 17.

     Ruling:  DEFERRED.

Plaintiff's witness list identifies Brent Scarborough as a licensed counselor, who "will testify in accordance with his provided medical records." Doc. No. 88, at 23-24. According to Plaintiff, Mr. Scarborough "will explain his diagnosis and prognosis for Mr. Salanitro relating to this traumatic incident," including the "affect [*sic*] and impact the shooting by Deputy Altiere has had on Mr. Salanitro." *Id.* Defendants move to exclude this testimony on the ground that

"[n]o expert report was ever provided as required by FRCP 26(a)(2)." Doc. No. 106, at 15.

Defendants add that even if Mr. Scarborough is an "unretained expert," and thereby exempt from

the requirement to provide an expert report, "he should nonetheless be excluded from testifying

because plaintiff failed to produce his records and chart notes." *Id.*, citing Fed. R. Civ.

P. 37(c)(1). Defendants state that Plaintiff's Exhibit 105 includes the notes and contract between

Plaintiff and Mr. Scarborough, but were never produced to Defendants during discovery.

Defendants further question the qualifications of Mr. Scarborough, whom Defendants say is an

intern, to provide a diagnosis of post-traumatic stress disorder (PTSD).

In response, Plaintiff states that Mr. Scarborough's testimony is being perpetuated by

stipulation of the parties and that the motion is therefore moot. Plaintiff adds that Mr.

Scarborough, whom Plaintiff describes as a registered Marriage and Family Therapist Intern, is

being offered as a treating professional, not as an expert.

The Court notes that the parties have filed a Stipulation to Discovery and Perpetuation

Deposition of Brent Scarbrough [*sic*]. Doc. No. 130. The Court will DEFER ruling on

Defendants' Motion in Limine No. 17 to determine whether Defendants withdraw this motion or,

if not, whether any party wishes to provide with Court with any additional information or

argument after the discovery and perpetuation depositions have been completed.

N.      Defendants' Motion in Limine No. 18.

Ruling:  DEFERRED.

Defendants move to exclude any evidence of Plaintiff's PTSD diagnosis on the grounds

that Plaintiff "failed to disclose key evidence of Mr. Salanitro's PTSD diagnosis until the

exchange of exhibits." This motion is related to Defendants' Motion in Limine No. 17. The

Court will DEFER ruling on Defendants' Motion in Limine No. 18 and will consider both motions together at a later time.

O.      Defendants' Motion in Limine No. 19.
        (*See also* Plaintiff's Motion in Limine No. 16)

Ruling:  GRANTED IN PART AND DENIED IN PART.

1.      Dale Fortune's Misdemeanor Convictions

In a trial to the court, witness Dale Fortune was convicted of Criminal Mischief 2 (ORS 164.354) arising out of his kicking his neighbor's vehicle, Resisting Arrest (ORS 162.315), and Attempted Assault of a Public Safety Officer (ORS 163.208; ORS 161.405), which are all misdemeanors. These charges arose out of Dale Fortune's conduct and action on September 21, 2010.

Plaintiff has moved in limine for an order excluding all such evidence. Plaintiff argues that this evidence should be excluded as irrelevant (FRE 402), unfairly prejudicial and likely to confuse the issues (FRE 403), and improper impeachment evidence (FRE 609). *See* Plaintiff's Motion in Limine No. 16, *supra.*

Defendants move in limine for an order allowing the testimony and related evidence of these criminal misdemeanor convictions. Defendants argue that these convictions prove that Dale Fortune kicked his neighbor's vehicle and resisted arrest and assaulted the police on the evening of September 21, 2010 at the Fortune residence.

The commotion and activities that occurred that evening inside the Fortunes' residence (and at their neighbor's home), and which gave rise to these convictions of Dale Fortune, are all part of the context in which Plaintiff awoke in the back room of the Fortunes' residence, entered the Fortunes' living, and was, shortly thereafter, shot by Deputy Altiere. Thus, they are relevant

under FRE 401. Further, all relevant evidence is admissible unless precluded by the United States Constitution, a federal statute, the Federal Rules of Evidence, or some other rule prescribed by the Supreme Court. FRE 402.

The convictions of Dale Fortune are not offered to prove a character trait. To the extent that the convictions are evidence of a crime, wrong, or other act, they are not being offered to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. Thus, this evidence is not precluded by FRE 404. The convictions of Dale Fortune are also not being offered to attack a witness's character for truthfulness. Thus, this evidence is not precluded by FRE 608(b).

Plaintiff responds by arguing that these criminal convictions of Dale Fortune are not relevant to any fact that is of consequence to this proceeding other than his possible personal bias against Defendants. The Court does not agree. If the fact of these convictions were not allowed in evidence, the jury might erroneously conclude that Dale Fortune did not resist arrest or assault the police during the very commotion and incident during which Plaintiff was shot by Deputy Altiere. These facts are relevant for the jury to receive a complete and accurate understanding to what was happening inside of the Fortune home when Plaintiff was shot, which is relevant to the question of whether excessive or unreasonable force was used. Thus, the Court will allow Dale Fortune to be asked whether he was convicted of the misdemeanor charges of Criminal Mischief 2 (ORS 164.354), Resisting Arrest (ORS 162.315), and Attempted Assault of a Public Safety Officer (ORS 163.208; ORS 161.405) and will assume that the witness will answer these questions truthfully under oath, if asked.

Finally, Plaintiff requests a limiting instruction. The Court will consider any instruction that Plaintiff proposes as part of the final instructions to the jury in this case.

2.      Sue Ann Fortune's Misdemeanor Conviction

Witness Sue Ann Fortune, the wife of Dale Fortune, was convicted of Interfering with a Peace Officer (ORS 162.247), which is also a misdemeanor, based on her actions on the evening of September 21, 2010. Thus, the arguments and analysis relating to Sue Ann Fortune's conviction presented in Plaintiff's Motion in Limine No. 16 and Defendants' Motion in Limine No. 19 largely parallel the arguments and analysis relating to Dale Fortune's convictions. But there is one potentially significant difference.

Plaintiff states that Sue Ann Fortune was convicted "on a plea of No Contest" to the misdemeanor charge of Interfering with a Peace Officer (ORS 162.247). Doc. No. 81, at 13. Defendant, however, states that "Sue Anne [*sic*] entered a *guilty plea* to the crime of Interfering With A Police Office." Doc. No. 106, at 17 (emphasis added). If Sue Ann Fortune entered a guilty plea to that charge, then the same analysis would apply as was discussed in connection with the misdemeanor convictions of Dale Fortune following his court trial.

If, however, Sue Ann Fortune did not plead guilty, but instead pleaded "no contest," then one might need to evaluate whether a different analysis would be implicated by FRE 410. FRE 410 provides, in relevant part: "In a civil or criminal case, evidence of the following is not admissible against the defendant who made . . . . (2) a *nolo contendere* plea." If Sue Ann Fortune pleaded "no contest," she would be "the defendant who made" that plea. The relevant question, however, would be whether her plea of no contest is being offered "against" her in a trial where she is only a witness and not a party.

Defendants argue that evidence in this case of such a plea by Sue Ann Fortune is not being offered "against" her in this trial. See Doc. No. 106, at 20. The Court agrees. In addition, Plaintiff has never argued that this evidence of Sue Ann Fortune's conviction would be precluded under FRE 410. Thus, the Court will allow Sue Ann Fortune to be asked whether she pleaded no contest to the misdemeanor charge of Interfering with a Peace Officer (ORS 162.247) and will assume that the witness will answer this question truthfully under oath, if asked.

P.   Defendants' Motion in Limine No. 22.

Ruling:  GRANTED IN PART AND DENIED IN PART.

Defendants move to exclude Plaintiff from making a "Walking in Plaintiff's Shoes" argument, also known as a "Golden Rule" argument. Such arguments are generally improper. *See* 2 Federal Civil Litigation in Oregon (OSB Legal Pubs 2009), § 24.48 ("Golden Rule" Arguments). Plaintiff responds by stating that "Plaintiff has no intention to make and will not make a 'Golden Rule' argument." Doc. No. 120, at 10. Defendants' Motion in Limine No. 22 is GRANTED to the extent that Plaintiff may not make a "Golden Rule" argument.

Defendants also move to exclude Plaintiff from making a "Send a Message" closing argument, also known as a "Call for Action" argument. Such arguments are generally proper when punitive damages are in issue, as they are in this case. *See Settlegoode v. Portland Public Schools,* 371 F.3d 503, 519 (9th Cir. 2004); *see also* 2 Federal Civil Litigation in Oregon (OSB Legal Pubs 2009), § 24.57 ("Calls for Action"). Defendants' Motion in Limine No. 22 is DENIED to the extent that Plaintiff may make a "Send a Message" closing argument.

Q.   Defendants' Motion in Limine No. 23.

Ruling:  DEFERRED.

Defendants argue that "[t]he use of force standards at issue in this case are established by federal common law" and that "[i]ndividual agency policies and procedures do not establish a standard of reasonableness under 42 U.S.C. § 1983." Doc. No. 106, at 24. Defendants further argue that the Fourth Amendment's protections are "not to be measured by reference to agency guidelines and other extra-constitutional matter." *Id.,* quoting *United States v. Guzman-Padilla,* 573 F.3d 865, 890 (9th Cir. 2009). In response, Plaintiff states that

> Plaintiff will not oppose this motion upon condition that neither party elicit testimony from any witness on these subjects. Based upon the witness statements filed with the court, such limitation of evidence would render moot all or most of the testimony from plaintiff's witnesses Michael Lyman, Ph.D., and Sheriff Garrett, and from defense witnesses Philip Zerzan and John Black, and would likely save at least one full trial day.

Doc. No. 120, at 11. The Court will DEFER ruling on Defendants' Motion in Limine No. 23 to determine from the parties whether Plaintiff's "condition" is acceptable to Defendants and whether the parties' understandings and expectations are consistent.

R.      Defendants' Motion in Limine No. 24.

Ruling:  DENIED.

Defendants move, in limine, that there be no jury view of the Fortune residence. As discussed in Section I above, the Court will allow a jury view.

## IV.     DEFENDANTS' OBJECTIONS TO PLAINTIFF'S TRIAL EXHIBITS

A.      Objections Resolved by the Parties

As set forth in the Joint Status Report and subject to the qualifications set forth in the Joint Status Report,

1.      Defendants do not object to the following trial exhibits offered by Plaintiff and these exhibits are pre-admitted and RECEIVED in evidence:  1-5, 7-11, 13-14, 15, 21, 23, 25-29, 37-58, 62, 66-74, 78-80, 82-85, 87, 90-92, 94, 96-99, 101-102, 104, 106, and 108-111.

2.      Plaintiff has withdrawn the following exhibits:  22, 32, 59, 63-65, 76-77, 81, 88-89, 93, and 107.

3.      Plaintiff has reserved the following exhibit numbers:  6, 24, 30, 60-61, 86, and 112, *et seq.*

4.      Plaintiff will use Exhibit 100 for demonstrative purposes only, without objection, and Exhibit 100 will not be sent to the jury room.

5.      Missing exhibits: The Court does not have a copy of exhibit 12.

B.      Plaintiff's Trial Exhibits Nos. 16-20.

Ruling:  OVERRULED. These exhibits are pre-admitted and RECEIVED in evidence.

C.      Plaintiff's Trial Exhibits Nos. 31, 33, and 34.

Ruling:  OVERRULED. These exhibits are pre-admitted and RECEIVED in evidence.

D.      Plaintiff's Trial Exhibits Nos. 35 and 36.

Ruling:  OVERRULED. These exhibits are pre-admitted and RECEIVED in evidence.

E.      Plaintiff's Trial Exhibit No. 75.

Ruling:  DEFFERED. Plaintiff is required to lay a foundation before exhibit 75 may be received.

F.      Plaintiff's Trial Exhibit No. 95.

Ruling:  SUSTAINED. Exhibit 95 may be used as demonstrative exhibit but may not be received in evidence. Plaintiff argues that this is "scientific evidence from a learned treatise

relied upon by experts in the ballistics field." In response, the Court notes that the final sentence in FRE 803(18), concerning learned treatises, reads: "If admitted, the statement [contained in a learned treatise] may be read into evidence but not received as an exhibit." When the "statement" contained in a learned treatise is a diagram, as is the case here, it may be shown to the jury but "not received as an exhibit."

G.    Plaintiff's Trial Exhibit No. 103.

Ruling:  DEFERRED. This exhibit will be discussed further during the pretrial conference.

H.    Plaintiff's Trial Exhibit No. 105.

Ruling:  DEFERRED, pending ruling on Defendants' Motion in Limine No. 17.

## V.    DEFENDANTS' OBJECTIONS TO PLAINTIFF'S WITNESS STATEMENTS

No objections have been received by the Court, except for Defendants' opposition to Plaintiff's Motion to Supplement Witness List, which is discussed at Section X, *infra*.

## VI.    DEFENDANTS' OBJECTIONS TO PLAINTIFF'S DEPOSITION DESIGNATIONS

No objections have been received by the Court.

## VII.    PLAINTIFF'S OBJECTIONS TO DEFENDANTS' TRIAL EXHIBITS

A.    Plaintiff's Objections Resolved by the Parties

As set forth in the Joint Status Report and subject to the qualifications set forth in the Joint Status Report,

1.    Plaintiff does not object to the following trial exhibits offered by Defendants and these exhibits are pre-admitted and RECEIVED in evidence:  201-205, 208-209, 211-213, 216,  217-222, 226, 229, 232, and 233.

2.      Defendants have withdrawn the following exhibits:  206-207, 210, 214-215, 230, and 231.

3.      Defendants have reserved the following exhibit numbers:  234, *et seq.*

4.      Plaintiff will use Exhibits 223-225 for demonstrative purposes only, without objection, and Exhibits 223-225 will not be sent to the jury room.

B.      Defendants' Trial Exhibits No. 227 and 228.

Ruling:  DEFERRED; *see* Defendants' Motion in Limine No. 23.

Defendants' Trial Exhibit No. 227 is a copy of the Washington County Sheriff's Office "Use of Force Principles," Policy # 1302-R03, effective January 15, 2010. Defendants' Trial Exhibit No. 228 is a copy of the Washington County Sheriff's Office "Use of Force Principles," Policy # 1302-R02, effective March 5, 2007. Plaintiff objects that they are cumulative, not relevant, and contain inadmissible hearsay. The Court overrules Plaintiff's objections. These exhibits are not unreasonably cumulative and are relevant. Being the operative documents that set forth the policies of the Washington County Sheriff's Office, they are not hearsay because they are not "assertions" under FRE 801. In adition, Plaintiff has not identified anything in these official policies that contain inadmissible hearsay. The Court further notes, however, that this issue and these objections may become moot depending on the resolution of  Defendants' Motion in Limine No. 23 and Defendants' response to Plaintiff's proposed stipulation the use (or lack of use) of official "use of force" policies at trial.

## VIII.   PLAINTIFF'S OBJECTIONS TO DEFENDANTS' WITNESS STATEMENTS

A.      Plaintiff's Objections Resolved by the Parties

As set forth in the Joint Status Report and subject to the qualifications set forth in the Joint Status Report, the parties have resolved Plaintiff's objections to the witness statements submitted by Defendants for: (1) Tuyen Ngo; (2) Daniel "Doc" Coulson; (3) Leonard Salanitro; (4) Michael Wise (whom Defendants withdraw as a potential witness).

B.       Plaintiff's Objections to the Witness Statement for Francis Robert Bletko

Ruling: Sustained.

Plaintiff objects to the proposed testimony of Defendants' witness Robert Bletko. Mr. Bletko is the former Chief Deputy District Attorney for Washington County. Defendants seek to have Mr. Bletko explain the reasons why Plaintiff was not charged with any crime arising out of this incident. Plaintiff argues that the reason behind the decision of the Washington County District Attorney's Office not to charge Plaintiff with a crime is irrelevant. Defendants respond that "Mr. Bletko's testimony is necessary to highlight [the] fact [that Defendants are not being sued for not criminally charging Plaintiff], and the fact that none of the defendants had anything to do with a decision made by the district attorney in the exercise of his discretion." Doc. No. 133, at 3. The Court concludes that the testimony of Mr. Bletko, as described in Defendants' witness list and response to Plaintiff's objection, is irrelevant. It is therefore excluded under FRE 402. In addition, even if it had some minimal probative value, any such probative value would be substantially outweighed by the risk that such evidence would and confusing the jury regarding the issues that the jury will be called upon to decide. As such, the evidence is also excluded under FRE 403. Defendants, however, upon request, will be afforded an opportunity outside the presence of the jury to make an offer of proof with Mr. Bletko and may request the Court then reconsider this ruling.

## IX.  PLAINTIFF'S OBJECTIONS TO DEFENDANTS' DEPOSITION DESIGNATIONS

A.  Plaintiff's Objections Resolved by the Parties

As set forth in the Joint Status Report and subject to the qualifications set forth in the Joint Status Report, the parties have resolved Plaintiff's objections to the following portions of Defendants' Substantive Deposition Testimony Designations of Leonard Salanitro:  (1) 87:3-6; (2) 116:4-7; (3) 118:14-18; (4) 161:7-14; and (5) 190:25-191:2.

B.  Plaintiff's Objections to 35:8-10.

Ruling:  SUSTAINED.

C.  Plaintiff's Objections to 40:18-41:7.

Ruling:  OVERRULED.

D.  Plaintiff's Objections to 55:8-56:6.

Ruling:  OVERRULED.

E.  Plaintiff's Objections to 154:11-155:7.

Ruling:  OVERRULED.

F.  Plaintiff's Objections to 156:11-19.

Ruling:  OVERRULED.

## X.  PLAINTIFF'S MOTION TO SUPPLEMENT WITNESS LIST (Doc. No. 135)

Ruling:  GRANTED WITH CONDITIONS.

Plaintiff moves for leave to supplement his witness list by adding five lay witnesses to Plaintiff's previously-identified 25 witnesses. Plaintiff estimates that the additional time needed for the direct examination of all five witnesses will not exceed one hour 35 minutes. Defendants opposed Plaintiff's motion, arguing that, among other things, the late addition of these witnesses

will cause undue prejudice to Defendants because some of these witnesses were not deposed and Defendants do not have sufficient time to conduct "any meaningful pre-trial preparation" before trial. Defendants further argue that the testimony of many of these additional witnesses would be "cumulative and unnecessary" in light of Plaintiff's originally-listed witnesses.

The Court finds Defendants' objections unpersuasive. Fact discovery closed November 15, 2012 (Doc. No. 39), and Plaintiff's Witness List was due January 17, 2013, four weeks before the pretrial conference (Doc. No. 40). Further, Plaintiff filed their motion to supplement on February 11, 2013, 25 days after the deadline, but still eight days before trial begins. The Court accepts Plaintiff's counsel's explanation for this delay.  Doc. No. 137.

The Court, however, will allow Defendants additional time to present any further evidentiary objections to the new testimony. In addition, Plaintiff must provide Defendants with advance notice of at least three business day (*i.e.*, trial days, not counting weekends or holidays) of the specific date when Plaintiff intends to call these five new witnesses, and Plaintiff may not call any of these new witnesses during the first two days of trial.

DATED this 13th day of February, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge